In the Matter of T & B GENERAL CONTRACTING, INC., Debtor.

T & B GENERAL CONTRACTING, INC., Plaintiff,

v.

The W.W. WILLIAMS COMPANY OF FLORIDA, INC., a Florida corporation; Port Charlotte Bank and Trust Company, a Florida banking corporation; and Ballenger Corporation, a South Carolina corporation, Defendant.

Bankruptcy No. 79–376.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 20, 1986.

Jeffrey Warren, Tampa, Fla., for debtor.

Roy W. Cohn, Tampa, Fla., for Ballenger Corp.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in this pre-Code proceeding is an issue submitted to this Court for resolution by T & B General Contracting, Inc. and Ballenger Corporation, the Plaintiff and one of the Defendants in this adversary proceeding. Although there are no formal motions for summary judgment before the Court, the parties agree that there are no genuine issues of any of the material facts and the

matter can be resolved as a matter of law. Under consideration is the Debtor's claim to profits resulting from certain joint ventures with the Defendant and the Defendant's right to setoff its claim against the Plaintiff's claim. The facts relevant and germane to the controversy, as gleaned from the record and the joint stipulation of the parties, are as follows:

T & B General Contracting, Inc. (Debtor) is a defunct Florida corporation which at the time of its petition under Chapter XI of the Bankruptcy Act was primarily engaged in road construction and construction of underground facilities. Ballenger Corporation (Ballenger) is a South Carolina corporation which was primarily engaged in interstate highway and bridge construction. In March of 1977, the Debtor and Ballenger entered into four contracts relating to an interstate highway construction for the Department of Transportation of the State of Florida (DOT) in which Ballenger was the prime contractor and the Debtor was a subcontractor. In October 1978, the Debtor and Ballenger entered into a Joint Venture Agreement for the purpose of performing certain construction work in a project for Punta Gorda Isles. This project was successfully completed in March of 1980, and Ballenger is now holding the profits from this joint venture pursuant to a prior order of this Court.

In 1978 and 1979, the Debtor experienced financial problems that ultimately led to its inability to meet its payroll and cause the termination of its workers' compensation and liability insurance. On March 8, 1979, Ballenger decided to terminate its contract on the interstate project with the Debtor, claiming breach by the Debtor and stating as grounds for the termination the insurance cancellation and the Debtor's inability to meet the payroll. Shortly thereafter, the Debtor filed its petition pursuant to Chapter XI of the Bankruptcy Act.

In due time, Ballenger filed a Proof of Claim and an Amended Proof of Claim against the Debtor for the cost it incurred as the result of the Debtor's failure to complete the four contracts with DOT for the interstate road project. The Debtor objected to this claim, and counterclaimed for monies allegedly owed to it by Ballenger for equipment rental and unpaid progress payments for work performed. In an order entered on June 10, 1981, this Court held that Ballenger had an allowable claim against the Debtor in the amount of $709,387.35, and that Ballenger owed the Debtor $56,934.00 for the equipment rental. The Court further held that the $56,934.00 owed the Debtor by Ballenger must be paid in full because that claim was not subject to any setoff.

The matter now before this Court is whether by virtue of the Joint Venture Agreement entered into by Ballenger and the Debtor in 1978, Ballenger is entitled to retain the Debtor's portion of the profits of the joint venture. Ballenger relies on ¶ 9 of the Joint Venture Agreement, which provides as follows:

It is specifically understood and agreed between the parties that this Joint Venture Agreement extends only to the performance of the construction contract, together with any changes or additions hereto for extra work thereunder; in no event shall this agreement extend to or cover any or other different work. The term "construction contract" as used herein is extended to and shall include the changes, additions, or extra work herein mentioned. PROVIDED, however, that it is understood and agreed that T & B is and has been performing certain other work as subcontractor for Ballenger on other projects in the Punta Gorda, Florida area, and it is mutually understood and agreed that Ballenger shall be entitled to a "setoff" against any profits earned by T & B under this construction Joint Venture Agreement resulting from advances which shall have been made by Ballenger to T & B on other construction projects and not repaid. T & B acknowledges by the signing hereof that Ballenger may from time to time advance funds to T & B, or may have already advanced funds to T & B on other projects, and T & B acknowledges

that any unpaid advances from said projects may be retained by Ballenger out of the profits earned by T & B on this particular project.

The "other projects" referred to in the Joint Venture Agreement are obviously the four contracts for the interstate highway project. Ballenger contends that as a result of the Debtor's default on the other projects, namely the interstate job, that the joint venture funds never became due to the Debtor and Ballenger is entitled to the funds. The Debtor claims that its share of the joint venture profits represent monies earned by the joint venture after the commencement of the Chapter XI case, and therefore the profit is property of the estate. The Debtor contends that to pay Ballenger the profit would constitute an impermissible setoff under § 68 of the Bankruptcy Act.

Section 68(a) & (b)(1) & (2) of the Bankruptcy Act of 1898 deals with the matter of setoff and provides as follows:

> In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be setoff against the other, and the balance only shall be allowed or paid.

> A setoff or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under Subdivision (g) of § 57 of this Act; or (2) was purchased by or transferred to him after the filing of the petition or within 4 months before such filing with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy.

■ In order to accomplish a setoff under § 68, there must be mutuality of debt and mutuality of parties. Mutuality of debt means that each party must owe something to the other side and that each party have a valid, enforceable claim against the other. Clearly, there is mutuality of debt between the parties in this case.

■ What prevents Ballenger from accomplishing a setoff in this case is the mutuality of parties. As this Court has held on numerous occasions, see i.e. *Matter of T & B General Contracting Co., Inc.,* 13 B.R. 686 (M.D.Fla.1981); *In re Eli Witt Co.,* 39 B.R. 984 (M.D.Fla.1980); *In re A's Plumbing Co., Inc.,* Case No. 78–226 (M.D. Fla.1979); *In re Big "D" Corporation,* CCH Bankr.Rptr. § 65, 450 (M.D.Fla.1974), when a pre-petition creditor seeks to setoff its claim against the claim of a debtor in possession which arose in its favor after commencement of a case, there is no mutuality of parties because the debtor in possession is an entity different and distinct from the debtor itself. Ballenger cannot setoff its claim against any monies earned by the Debtor after the commencement of the case. Even though Ballenger and the Debtor entered into the Joint Venture Agreement and began work on the Punta Gorda project pre-petition, it is clear that the project was not completed until after the Debtor filed its petition in bankruptcy and that the profits on the project were not earned and did not become due until after the commencement of the case.

Ballenger also urges that the Debtor was never "owed" the profits because pursuant to the Joint Venture Agreement, Ballenger was entitled to setoff against the profits any advances made to the Debtor. Ballenger contends that the $709,387.35 awarded to it by this Court in a prior order was just an "advance." This contention is clearly without merit as there is no doubt that the monies awarded Ballenger in this Court's order entered June 10, 1981 were not for advances to the Debtor, but for the cost of completing the four interstate contracts under which the Debtor defaulted. This Court is satisfied that the Debtor is entitled to its share of the profits on the Punta Gorda project and became entitled to the profits post-petition and not pre-petition. Ballenger is not entitled to a setoff against the Debtor and must turn over the Debtor's share of profits from the Joint Venture Agreement. Accordingly, the parties having submitted the issue for resolution on an oral joint motion for summary judgment

with stipulated facts, this Court is satisfied that the Debtor must prevail in the oral joint motion for summary judgment and is entitled to recover from Ballenger its share of the profits from the Punta Gorda project and that Ballenger is not entitled to setoff this sum from the money owed to it by the Debtor.

 Because there is no evidence before this Court as to the amount of the Debtor's share of profits held by Ballenger, this cause must be set down for final evidentiary hearing on the limited issue of the amount of the Debtor's share of profits held by Ballenger unless, within 20 days from the date of this Findings of Fact, Conclusions of Law, and Memorandum Opinion, this Court is presented with a joint stipulation as to said amount. If no joint stipulation is filed within 20 days, a final evidentiary hearing will be held on Nov. 19, 1986 at 11:00 a.m.